UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

GREEKTOWN HOLDINGS, LLC, *et al.*,

        Debtors.
_____/

Case No. 08-53104
Chapter 11
Jointly Administered
Hon. Walter Shapero

BUCHWALD CAPITAL ADVISORS, LLC, solely
in its capacity as Litigation Trustee to the
GREEKTOWN LITIGATION TRUST,

        Plaintiff,

v.

DIMITRIOS ("JIM") PAPAS, VIOLA PAPAS,
TED GATZAROS, MARIA GATZAROS,
BARDEN DEVELOPMENT, INC., LAC VIEUX
DESERT BAND OF LAKE SUPERIOR
INDIANS, SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS, KEWADIN CASINOS
GAMING AUTHORITY, and BARDEN
NEVADA GAMING, LLC,

        Defendants.
_____/

Adv. Pro. No. 10-05712

## OPINION DENYING RENEWED AND SUPPLEMENTED MOTION TO DISMISS OF DEFENDANTS SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS AND KEWADIN CASINOS GAMING AUTHORITY (DKT. 453)

### INTRODUCTION

Plaintiff, as Litigation Trustee, seeks to avoid transfers made by a debtor corporation to several parties, arguing that the transfers were fraudulent transfers under applicable Michigan law. Two Defendants, an Indian tribe and its political subdivision, moved to dismiss on the basis of sovereign immunity. The motion is denied.

BACKGROUND

The Litigation Trustee ("Plaintiff") seeks to avoid aspects of a restructuring and financing transaction whereby Greektown Holdings, LLC, a Debtor, directly or indirectly transferred money to multiple parties, including the Sault Ste. Marie Tribe of Chippewa Indians and its political subdivision Kewadin Casinos Gaming Authority (together, "the Tribe Defendants").[1] Plaintiff brought this fraudulent transfer action under 11 U.S.C. §§ 544 and 550, incorporating Mich. Comp. Laws §§ 566.34 and 566.35. Shortly thereafter, the Tribe Defendants moved to dismiss the adversary proceeding as to themselves, asserting Indian tribal sovereign immunity. Dkt. 8. Upon stipulation by Plaintiff and the Tribe Defendants, the Court entered an order bifurcating these two sovereign immunity issues: (1) Whether Congress abrogated the Tribe Defendants' sovereign immunity by enacting 11 U.S.C. § 106; and (2) whether the Tribe Defendants consensually waived their sovereign immunity. Dkt. 85. This opinion deals solely with the former issue, with the latter issue remaining in abeyance. The Court entertained briefs, held a hearing, and took the matter under advisement.

Plaintiff and the Tribe Defendants then reached a settlement. The District Court withdrew its reference of this matter and entered a settlement order. Other Defendants, who had previously objected to aspects of the District Court's settlement order, appealed it. The Sixth Circuit Court of Appeals agreed with them, to an extent, and remanded to the District Court. A fuller discussion of

---

[1] In an order entered on June 13, 2008 in the main Chapter 11 case (Case No. 08-53104, Dkt. 114), these several bankruptcies were consolidated for procedural purposes only and became jointly administered. In an order entered on April 22, 2010 in the main Chapter 11 case (Dkt. 2279), the Court granted the Official Committee of Unsecured Creditors ("Committee") authority to pursue bond avoidance claims on behalf of Greektown Holdings, LLC. In accordance with that order, the Committee initiated this adversary proceeding on May 28, 2010. Through a consent order entered in this adversary proceeding on August 14, 2010 (Adv. Pro. No. 10-05712, Dkt. 64), Buchwald Capital Advisors, LLC, solely in its capacity as Litigation Trustee for The Greektown Litigation Trust, substituted in for the Committee, and thereafter has prosecuted this action.

the procedural history (which is not of particular relevance to this opinion) can be found in that remanding opinion: *Papas, et al. v. Buchwald Capital Advisors, LLC, et al.*, 728 F.3d 567 (6th Cir. 2013). Thereafter, Plaintiff and the Tribe Defendants unsuccessfully mediated this matter as part of global settlement discussions. It appearing that those settlement discussions are no longer being presently pursued, the Tribe Defendants renewed and supplemented their motion to dismiss. Dkt. 453. The Court again entertained briefs, held a hearing, and took the matter under advisement.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157, and E.D. Mich. L.B.R. 83.50(a).

## MOTION TO DISMISS STANDARD

Fed.R.Bankr.P. 7012 incorporates Fed.R.Civ.P. 12(b)(1) and provides that a party may by motion assert the defense of lack of subject-matter jurisdiction. The Court must assume that the allegations in Plaintiff's complaint are true and Plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss. *3D Sys., Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 802-03 (E.D. Mich. 2008).

## DISCUSSION

### The Legal Issue and the Standard for Abrogation of Tribal Sovereign Immunity

11 U.S.C. § 106(a) provides: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections… 544… [and] 550." In turn, "governmental unit" is defined in § 101(27).

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

These statutes do not specifically mention "Indian tribes," nor does any other provision in the Bankruptcy Code. *In re Nat'l Cattle Cong.*, 247 B.R. 259, 267 (Bankr. N.D. Iowa 2000). The specific legal issue is whether the phrase "or other foreign or domestic government" includes Indian tribes and thus abrogates their sovereign immunity for purposes of the Bankruptcy Code.

The Supreme Court has referred to and described Indian tribes as follows:

> Indian tribes are " 'domestic dependent nations' " that exercise "inherent sovereign authority." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (*Potawatomi*) (quoting *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)). As dependents, the tribes are subject to plenary control by Congress. See *United States v. Lara*, 541 U.S. 193, 200, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004) ("[T]he Constitution grants Congress" powers "we have consistently described as 'plenary and exclusive' " to "legislate in respect to Indian tribes"). And yet they remain "separate sovereigns pre-existing the Constitution." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Thus, unless and "until Congress acts, the tribes retain" their historic sovereign authority. *United States v. Wheeler*, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

*Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014). Congressional actions abrogating tribal sovereign immunity must be clear, unequivocal, and not to be lightly assumed by a court. *Id.* at 231-32. Even if an Indian tribe is subject to a law of general applicability, it is not necessarily subject to suit thereunder unless sovereign immunity is abrogated. *Fla. Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla.*, 166 F.3d 1126, 1130 (11th Cir. 1999) (discussing *Kiowa Tribe of Okla. v. Mfg. Technologies, Inc.*, 523 U.S. 751, 755 (1998)). "Evidence of congressional intent must be both unequivocal and textual." *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989). It must be said with "perfect confidence" that Congress intended to abrogate sovereign immunity and "imperfect

confidence will not suffice." *Id.* at 231. Abrogation of tribal sovereign immunity may not be implied. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). As one court artfully stated, "If there were no thumbs on the interpretive scale, the question of intent reasonably could be decided either way and that exemplifies ambiguity. Because there is ambiguity, the thumb that presses down in favor of tribal sovereign immunity tips the balance." *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1210 (11th Cir. 2009) (citations omitted).

In essence, and as will be further discussed, the Court takes the Tribe Defendants' argument to be that, in light of the foregoing pronouncements, (a) for a statute to abrogate tribal sovereign immunity, it must specifically use the words "Indian tribes" (or perhaps some synonymous verbiage); and (b) if the statute does not use such verbiage, and irrespective of any other language used, the purported abrogation fails to meet the foregoing pronouncements and is not effective as to Indian tribes.

A.  *Parsing the Language of § 101(27), Are Indian Tribes "Other Foreign or Domestic Governments" ?*

One aspect of this definition can be easily eliminated from consideration: "foreign governments." The Supreme Court has found or stated that Indian tribes are unique entities, but has also indicated that they are not "foreign governments" per se. "Although we early rejected the notion that Indian tribes are 'foreign states' for jurisdictional purposes under Art. III, *Cherokee Nation v. Georgia*, 5 Pet. 1, 8 L.Ed. 25 (1831), we have also recognized that the tribes remain quasi-sovereign nations which, by government structure, culture, and source of sovereignty are in many ways foreign to the constitutional institutions of the federal and state governments." *Santa Clara Pueblo*, 436 U.S. at 71 (citation omitted); *see also Bay Mills Indian Cmty.*, 134 S. Ct. at 2040-41 (2014) (Sotomayor, J., concurring) ("Indian Tribes have never historically been classified as 'foreign' governments in

federal courts even when they asked to be. . . . Two centuries of jurisprudence therefore weigh against treating Tribes like foreign visitors in American courts."). The Commerce Clause of the U.S. Constitution distinguishes Indian tribes from "foreign nations," providing: "The Congress shall have Power… To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes[.]" Art. 1, § 8, cl. 3. This Court is thus satisfied that Indian tribes are not "foreign governments" within the definition of § 101(27).

B. *If Indian Tribes are not "Foreign Governments," are they "Governments" in the First Place?*

The Tribe Defendants stress that the Supreme Court has gone to extraordinary lengths to avoid calling Indian tribes "governments." The Supreme Court has predominantly relied on the nomenclature "domestic dependent nations." *See Bay Mills Indian Cmty.*, 134 S. Ct. at 2030 (2014). Congress is presumed to be aware of such when enacting legislation.[2] The Tribe Defendants rely upon one of two relevant appellate court cases, which opined:

> Indeed, while the Supreme Court has referred to Indian tribes as "sovereigns," "nations," and even "distinct, independent political communities, retaining their original natural rights," the trustees cite no case in which the Supreme Court has referred to an Indian tribe as a "government" of any sort—domestic, foreign, or otherwise. The apparent care taken by the Supreme Court not to refer to Indian tribes as "governments" reinforces Justice Marshall's pronouncement in *Cherokee Nation* that Indian tribes are exceptionally unique, unlike any other form of sovereign, which is why he coined the phrase "domestic dependent nation." If the Supreme Court considered an Indian tribe to be a "government," it would not go to such great lengths to avoid saying so.

*In re Whitaker*, 474 B.R. 687, 695 (B.A.P. 8th Cir. 2012) (footnote omitted). The other relevant appellate case, relied upon by Plaintiff, opined:

---

[2] The parties did not cite to or substantially discuss any legislative history of the Bankruptcy Code, nor would the Court be inclined to consider such in any event, given the nature of the inquiry.

> Indian tribes are certainly governments, whether considered foreign or domestic (and, logically, there is no other form of government outside the foreign/domestic dichotomy, unless one entertains the possibility of extra-terrestrial states).
>
> The Supreme Court has recognized that Indian tribes are " 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories." *Potawatomi*, 498 U.S. at 509, 111 S.Ct. 905 (citing *Cherokee Nation v. Georgia*, 5 Pet. 1, 17, 8 L.Ed. 25 (1831)); *see also*, *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (comparing Indian tribes to states and foreign sovereigns, and concluding that both states and Indian tribes are "domestic" sovereigns). So the category "Indian tribes" is simply a specific member of the group of domestic governments, the immunity of which Congress intended to abrogate.
>
> … no definition in the Bankruptcy Code actually lists "Indian tribes" as either a foreign or domestic government. However, in enacting the Bankruptcy code, Congress was legislating against the back-drop of prior Supreme Court decisions, which do define Indian tribes as domestic nations, i.e., governments, as well as against the ordinary, all-encompassing meaning of the term "other foreign or domestic governments."

*Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1057-59 (9th Cir. 2004), *cert. denied*, 543 U.S. 871 (2004).

Plaintiff also directs this Court's attention to a recent concurring opinion that stated "[b]oth States and Tribes are domestic governments…" *Bay Mills Indian Cmty.*, 134 S. Ct. at 2042 (Sotomayor, J., concurring). The Tribe Defendants argue that such language has little, if any, precedential value and does not relate to Congressional intent at the time it wrote the relevant statutes. While that pronouncement was not crucial or essential to that decision, or dispositive in this case, it does express such a point of view, for whatever it is worth. It does not weigh materially in this Court's analysis or conclusion.

Noting those quoted and conflicting appellate cases, this Court finds *Krystal Energy* far more persuasive than *In re Whittaker* on this point. Indian tribes are clearly and unequivocally "governments," despite their uniqueness. This Court could delve into an examination into the nature,

function, and purpose of Indian tribes and whether they indeed "govern." *Compare Bay Mills Indian Cmty.*, 134 S. Ct. at 2030 (Indians tribes hold "governmental powers and attributes"), *with In re Whitaker,* 474 B.R. at 693 ("Granted, Indian tribes can and do provide certain governmental functions for their members. But the several steps needed to justify the holding in these cases is far from an unequivocal expression of Congressional intent to abrogate the tribes' immunity…"). The Court could also compare and contrast a "government" and a "nation" (something not substantially discussed by the parties). But in any event, these inquiries would beg a more basic question: what sort of entities hold sovereign immunity? By the very definition of sovereign immunity, only *governmental* entities hold it. Black's Law Dictionary (9th ed. 2009) defines "sovereign immunity" as "[a] *government's* immunity from being sued in its own courts without its consent. . . . Also termed *government* immunity; *governmental* immunity." (emphasis added). *See* § 106(a) ("…sovereign immunity is abrogated as to a governmental unit…"). Thus, if an entity holds sovereign immunity, it is perforce a "governmental" entity.[3]

C.  *Having Determined that Indian Tribes are Governments, are they "Domestic Governments"?*

The reference to "foreign or domestic government" in § 101(27) logically creates dichotomy: either something is domestic, or otherwise it is foreign. *Krystal Energy*, 357 F.3d at 1057. The

---

[3] Plaintiff also argued (attaching supporting exhibits) that Indian tribes have been referred to as "governments" by the Bureau of Indian Affairs, past Presidents of the United States, and the National Congress of American Indians. Plaintiff contends these statements validate and reinforce its construction of the term "government." The Tribe Defendants respond that (a) such statements are irrelevant to the analysis; and (b) Plaintiff's resorting to such secondary sources actually undercuts Plaintiff's position that Indian tribes are *clearly and unequivocally* governments. Noting these arguments, the Court does not consider any of these statements or the supporting exhibits to weigh materially in its analysis or conclusion.

dichotomy is a territorial one. *See Id.* The Supreme Court has long recognized that Indian tribes are territorially domestic, opining:

> The Indian territory is admitted to compose a part of the United States. In all our maps, geographical treatises, histories, and laws, it is so considered. In all our intercourse with foreign nations, in our commercial regulations, in any attempt at intercourse between Indians and foreign nations, they are considered as within the jurisdictional limits of the United States, subject to many of those restraints which are imposed upon our own citizens.

*Cherokee Nation,* 5 Pet. at 17. Similarly:

> This, however, is no reason why the laws and proceedings of the Cherokee territory, so far as relates to rights claimed under them, should not be placed upon the same footing as other territories in the Union. It is not a foreign, but a domestic territory-a territory which originated under our constitution and laws.

*U.S., to Use of Mackey v. Coxe,* 59 U.S. 100, 103 (1855). The Supreme Court has otherwise described Indian tribes as "domestic" in nature, echoing that the dichotomy is indeed a territorial one. *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 782 (1991) ("Respondents argue that Indian tribes are more like States than foreign sovereigns. That is true in some respects: They are, for example, domestic."); The definitions stated in Black's Law Dictionary support this conclusion, as discussed by *In re Mayes*, 294 B.R. 145, 158-59 (B.A.P. 10th Cir. 2003) (McFeely, J., dissenting):

> The word "domestic" means "pertaining, belonging, or relating to a home, a domicile, or to the place of birth, origin, creation or transaction." A government is "that form of fundamental rules and principles by which a nation or state is governed, or by which individual members of a body politic are to regulate their social actions." So a domestic government would be a group within the lands of the United States that operates through some form of ruling principles.

(footnotes omitted). Indian tribes fall within this definition.

This Court's conclusion is reinforced by several other factors. First, the adjective "domestic" has been used by the Supreme Court to describe Indian tribes for almost two centuries. It is not

relevant that this adjective was used to modify "dependent nation" rather than "government." Second, Indian tribes must logically fall somewhere in the foreign/domestic dichotomy. Because the Court has previously concluded that Indian tribes are not foreign, as a matter of logic, they must perforce be domestic. The Tribe Defendants argue that because Indian tribes are unique, they are "tribal governments," i.e. part of a separate category that transcends the foreign/domestic dichotomy. It cannot be logically said that, because an entity is unique and borrows some characteristics from both categories in a dichotomy, that it falls wholly outside both categories. Further, the dichotomy requires a territorial inquiry, not an inquiry into the nature, purpose, or function of the entity.[4] For those reasons, the Court finds that Indian tribes are "domestic governments" within the meaning of § 101(27).

D. *If Indian Tribes Do Not Fall Under the Term "Other Domestic Governments," What Else Does?*

This question further reinforces the Court's conclusion that Indian tribes are "domestic governments." Congress expanded the scope of "governmental unit" by adding the phrase "or other foreign or domestic government." "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1379 (2013) (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). "The sovereign immunity

---

[4] Query: would the unique or peculiar status of the Holy See (otherwise known as the Vatican) necessarily preclude it from being within the Bankruptcy Code's definition of "foreign state; department, agency, or instrumentality of… a foreign state; or other foreign… government"? Could the Holy See successfully argue that it is in a separate category of "ecclesiastical government" that somehow transcends the foreign/domestic dichotomy? The Court strongly doubts it, given the breadth of the statutory definition and the fact the Holy See is territorially "foreign" to the United States. *See also Doe v. Holy See,* 557 F.3d 1066 (9th Cir. 2009) (discussing the Holy See's immunity under the Foreign Sovereign Immunities Act and its limitations).

canon is just that—a canon of construction. It is a tool for interpreting the law, and we have never held that it displaces the other traditional tools of statutory construction." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008), *cf. Montana v. Blackfeet Tribe of Indians*, 471 U.S. at 766 ("the standard principles of statutory construction do not have their usual force in cases involving Indian law."). With that in mind, this Court is extremely hesitant to wholly erase the phrase "or other… domestic government" from the Bankruptcy Code. Congress would not include this phrase if it was a meaningless nullity. Similarly, this Court should not act to transform that phrase into a meaningless nullity. Therefore, if Indian tribes do not comprise or fall under "other… domestic government," there must be some other domestic government that was not enumerated and that gives meaning to the phrase.

Upon being so questioned at the most recent hearing, counsel for the Tribe Defendants was unable to provide such an example. This presents a serious problem with the Tribe Defendants' position. Other Courts have also faced this question and been unable to provide such an example.

> But the Nation has not suggested, either in its memoranda or at oral argument, any possible other meaning of "domestic government" that would not include Indian tribes. Indeed, since the meaning of "or other foreign or domestic government" cannot include the United States, or a State, Commonwealth, Territory or District, or a municipality, or a foreign state, or an agency, department or instrumentality of any of them, because they are all expressly mentioned, it is difficult if not impossible to come up with any possible meaning for "other domestic government" *except* Indian tribes. Without another reasonable plausible alternative meaning, the abrogation of sovereign immunity as to all domestic governments is not equivocal. It could hardly be more absolute.

*In re Russell*, 293 B.R. 34, 41 (Bankr. D. Ariz. 2003) (emphasis original) (footnote omitted). Similarly, one thoughtful dissent[5] stated:

---

[5] The majority opined that the appellant abandoned the tribal sovereign immunity argument. It did, however, include dictum in a footnote, stating that Indian tribes "probably are not" domestic governments. *Id.* at 148 n.10.

> An important statutory maxim of interpretation requires a court to give operative effect to every word Congress used. Because in § 101(27) all other forms of domestic government prior to the semicolon are enumerated, if the phrase following the semicolon is not read as referring to Indian tribes and other indigenous peoples, the phrase becomes meaningless. There are no other forms of domestic government that have not already been specified.

*In re Mayes*, 294 B.R. at 159 (McFeeley, J., dissenting) (footnote omitted). The Court concludes that the only rational, non-absurd explanation is that the phrase "other… domestic government" is comprised exclusively of Indian tribes. To draw an analogy, imagine Congress enacted a statute that stated "red, white, and any other color appearing on the flag of the United States of America." As a matter of logic, that statute would have to be construed to clearly and unequivocally include "blue."

Nor is the Court is not persuaded by the Tribe Defendants' argument based on *ejusdem generis*, which is defined by Black's Law Dictionary (9th ed. 2009) as "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *See United States v. Mabry*, 518 F.3d 442, 447 (6th Cir. 2008). The Tribe Defendants argued that "other… domestic government" must be construed as limited to the types of entities with the same characteristics as those specifically enumerated (such as, for example, states or municipalities). In the Tribe Defendants' view, that would only include entities that are "comparable" to a state or municipality. That argument fails because the Tribe Defendants do not (and indeed *cannot*) prove that there exist entities that are "comparable" to states and municipalities that are not already encompassed by the enumerated terms "state" and "municipality."[6] *Ejusdem generis* is inapplicable, at least as the Tribe Defendants would employ it. In fact, an argument could be made that *ejusdem generis* supports a

---

[6] In case there was any doubt as to the broad scope of the Bankruptcy Code's definition of "governmental unit," § 101(40) further provides that: "[t]he term 'municipality' means political subdivision or public agency or instrumentality of a State."

finding that "other…domestic government" includes Indian tribes. The commonality between the enumerated entities and Indian tribes is that they all hold sovereign immunity and are all governmental entities.

E.  *It is not Dispositive that, in Other Statutory Schemes, Congress has Explicitly Referred to "Indian Tribes"*

The Tribe Defendants argue that, because Congress has, on several other occasions, explicitly used the words "Indian tribe" (or similar language) when abrogating tribal sovereign immunity, that Congress' failure to include such words in § 101(27) of the Bankruptcy Code is indicative that it did not intend to do so here. The Tribe Defendants cite to several examples relative to abrogation of tribal sovereign immunity.[7] Some key examples include the following, first:

> Indian tribes are expressly subjected to the Act's preemption rules. Every relevant subsection of section 1811 contains the language "state or political subdivision thereof or Indian tribe." *See* 49 U.S.C.App. § 1811(a)–(d). The Act's plain language indicates that, sovereign immunity notwithstanding, states and Indian tribes are subject to the preemption rules, including the provision that allows preemption cases to be brought in "any court of competent jurisdiction." 49 U.S.C.App. § 1811(c)(2). This language is sufficient to constitute an express waiver of tribal sovereignty.

*N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty.*, 991 F.2d 458, 462 (8th Cir. 1993) (discussing the Hazardous Materials Transportation Act). Second:

---

[7] The Tribe Defendants also cite several instances in which Congress made clear its intent to include Indian tribes within the scope of other statutory schemes (but not necessarily with regard to abrogating tribal sovereign immunity): 7 U.S.C. § 8310 ("Indian tribes"); 42 U.S.C. § 9601(16) ("any Indian tribe"); 16 U.S.C. § 698v-4 ("Indian Tribes and Pueblos"); 49 U.S.C. § 5121(g) ("Indian tribe"); 42 U.S.C. § 8802(17) ("any Indian tribe or tribal organization"); 42 U.S.C. § 6372 ("the recognized governing body of an Indian tribe (as defined in section 6862 of this title) which governing body performs substantial governmental functions"); 42 U.S.C. § 4762(5) ("the recognized governing body of an Indian tribe, band, pueblo, or other organized group or community, including any Alaska Native village, as defined in the Alaska Native Claims Settlement Act (85 Stat. 688) [43 U.S.C.A. § 1601 et seq.], which performs substantial governmental functions.").

> We hold that where Congress grants an agency jurisdiction over all "persons," defines "persons" to include "municipality," and in turn defines "municipality," to include "Indian Tribe[s]," in establishing a uniform national scheme of regulation of so universal a subject as drinking water, it has unequivocally waived tribal immunity. We note that Congress could have been more clear. Congress could have included a provision directly stating its intent to waive tribal immunity. However, "that degree of explicitness is not required." *Davidson v. Board of Governors*, 920 F.2d 441, 443 (7th Cir.1990) (noting Congress need not state in "so many words" its intent to abrogate state sovereign immunity).

*Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor*, 187 F.3d 1174, 1182 (10th Cir. 1999) (alteration in original) (discussing the Safe Drinking Water Act). Third:

> Congress also decided to regulate the disposal of discarded materials on reservations. Under the RCRA, citizens are permitted to bring compliance suits "against any person (including (a) the United States, and (b) any other governmental instrumentality or agency * * * ) who is alleged to be in violation * * *." 42 U.S.C. § 6972(a)(1)(A). "Person" is subsequently defined to include municipalities. 42 U.S.C. § 6903(15). Municipalities include "an Indian tribe or authorized tribal organization * * *." 42 U.S.C. § 6903(13)(A) . *See also* House Report, *supra* note 1, at 37, USCAN 6275 (specific examples of harm to be avoided, including Indian children playing in dumps on reservations); *State of Washington Dep't of Ecology v. E.P.A.*, 752 F.2d 1465, 1469–71 (1985) (RCRA applies to Indian tribes). It thus seems clear that the text and history of the RCRA clearly indicates congressional intent to abrogate the Tribe's sovereign immunity with respect to violations of the RCRA.

*Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1097 (8th Cir. 1989) (alterations in original) (footnote omitted) (discussing the Resource Conservation and Recovery Act).

What can be gleaned from these examples is that an explicit reference to "Indian tribes" in a statute is sufficient for Congress to clearly and unequivocally abrogate tribal sovereign immunity. However, just because that is *sufficient* does not mean it is *required*. The Court in *In re Russell*, 293 B.R. at 43 was also presented with an argument similar to that made by the Tribe Defendants and found it to be "a rather weak inductive argument" because, although the use of the phrase "Indian tribe" may be a powerful statement, it is not the only way Congress can abrogate tribal sovereign immunity. Although Congress did not use the most powerful tool at its disposal here (the proverbial

"magic words" of "Indian tribe" or some synonymous verbiage), the words it did use, in light of the totality of the foregoing analysis, warrant the conclusion that Congress had the clear, unequivocal, and unambiguous intent to abrogate tribal sovereign immunity.[8] In this connection, the Supreme Court recently opined:

> Although this canon of interpretation requires an unmistakable statutory expression of congressional intent to waive the Government's immunity, Congress need not state its intent in any particular way. We have never required that Congress use magic words. To the contrary, we have observed that the sovereign immunity canon "is a tool for interpreting the law" and that it does not "displac[e] the other traditional tools of statutory construction." *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 589, 128 S.Ct. 2007, 170 L.Ed.2d 960 (2008). What we thus require is that the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools. If it is not, then we take the interpretation most favorable to the Government.

*F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012) (alteration in original) (Privacy Act provided for recovery of "actual damages" from the United States, but such did not unequivocally waive its sovereign immunity for other damages that are beyond the scope of "actual damages"). A court should not enlarge a statute's waiver of sovereign immunity beyond what a fair reading of the language requires. *See Id.* "Congress need not use magic words to waive sovereign immunity, but the language it chooses must be unequivocal and unambiguous." *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (citation omitted). "The only way Congress could have been clearer would have been to say 'this act abrogates state sovereign immunity.' But the Supreme Court

---

[8] This logically raises the question of what verbiage, other than "Indian tribes," might suffice to clearly and unequivocally abrogate the Tribe Defendants' sovereign immunity. For instance, which of the following phrases might meet this standard if included in the statute?
    (a) "any entity able to assert sovereign immunity"
    (b) "domestic dependent nations"
    (c) "organizations of indigenous peoples"
    (d) "tribal nations"
    (e) "the Navajo Nation, the Coushatta Tribe of Louisiana, and all similar entities and organizations"

has made it quite plain that such magic words are unnecessary." *Alaska v. EEOC*, 564 F.3d 1062, 1066-67 (9th Cir. 2009) (statute that authorized state employees to recover damages payable by their employer was deemed to abrogate state sovereign immunity, despite the statute not mentioning abrogation, sovereign immunity, or the Eleventh Amendment). This Court thus concludes that Congress made its intent unequivocally, perfectly, and sufficiently clear, despite not using the "magic words."

The Court is also not persuaded by the Tribe Defendants' reliance on *Florida Paraplegic Ass'n, Inc., v. Miccosukee Tribe of Indians of Florida.*, in which that Court held that "the absence of any reference to Indian tribes in the former statute stands out as a stark omission of any attempt by Congress to declare tribes subject to private suit for violating the ADA's public accommodation requirements." 166 F.3d at 1132 (footnote omitted). But that act did not contain a provision abrogating the sovereign immunity of *all* domestic governments. *In re Russell,* 293 B.R. at 44. The ADA only explicitly abrogated the sovereign immunity of states under the Eleventh Amendment to the U.S. Constitution, which its legislative history confirmed. *Fla. Paraplegic Ass'n,* 166 F.3d at 1133. Because, in this case, there exists the phrase "other… domestic governments," which can only be interpreted to mean "Indian tribes," particularly in light of the all-inclusive enumeration in the statute of other domestic governments, *Florida Paraplegic* is not particularly helpful to the Tribe Defendants.

F. *The Court's Conclusion that Congress Abrogated Tribal Sovereign Immunity Satisfies the Applicable Standard as being Perfectly Clear, Unequivocal, and not Implied*

The Tribe Defendants argue that the mere fact that this legal question is so disputed is indication that (a) there is no clear or unequivocal Congressional intent to abrogate tribal sovereign immunity; and (b) there is no way to conclude that Congress abrogated tribal sovereign immunity

without such being implied. They note that there are two sharply conflicting appellate cases on this exact issue. *Compare Krystal Energy*, 357 F.3d 1055, *with In re Whitaker*, 474 B.R. 687. (One might even argue that the very length of this Court's own opinion is itself indicative that any such Congressional intent is less than perfectly clear.)

Certainly, Congressional intent to abrogate tribal sovereign immunity cannot be implied. *Santa Clara Pueblo*, 436 U.S. at 58. *In re Russell* provides an important discussion on the meaning of the word "imply," particularly as relates to this legal issue.

> The first possible meaning is "to impute or impose on equitable or legal grounds." This usage is unique to legal writing, and very common in legal writing, and is therefore is the most likely usage the [Supreme] Court intended. This is the usage when courts imply a contract, a trust, or a promise that was never actually made or even suggested. Perhaps the usage closest to the present context is when courts imply a private right of action in a statute. When they do so, they are not using the term in its ordinary English usage, because the court's holding is express rather than implied, and usually the court is not suggesting that the Congress or legislature consciously intended there to be a private right of action but only indicated it by implication. Instead, the court is imposing it because it is equitable to do so, just as a promise or a contract may be implied when a party acts to its detriment in reliance on another's statement or conduct. That is a particularly apt meaning in this context, because it means the Court is saying that abrogation of sovereign immunity cannot be implied in the same way a right of action might be implied even when the statutory language is silent on the subject. Under that meaning, however, there can be no argument that application of § 106(a) to tribes would be to imply an abrogation of sovereign immunity, because the language of § 106 is quite express. To apply § 106 to tribes would not be "to impute or impose" a legal right or obligation on which the statute is silent but is merely to apply the express words of the statute.
>
> The second possible meaning is "to read into (a document)." This means to infer a meaning that the author probably intended but is not found in the express words of the document. Perhaps, for example, the authors of the Constitution implied a right of privacy even though no words make that intention express. Again, however, it is clear that under this meaning the abrogation of sovereign immunity was not merely implied by Congress, because it is express in § 106. Concluding that §§ 101(27) and 106(a) include Indian tribes is not to conclude the authors implied something without making it express, but merely to apply what is expressly said. So under this meaning as well there is no violation of the Court's proscription against abrogation by implication in concluding that § 106 includes Indian tribes.

293 B.R. at 38-39 (footnotes omitted). Nothing in this Court's opinion is within either of these two definitions of "imply." In the Court's opinion, there is a material difference between (a) determining the scope or extent of an explicitly stated abrogation of sovereign immunity, as is the issue here; and (b) determining whether there was any abrogation in the first place where the statute is silent on the matter. *e.g. Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 920 (6th Cir. 2009); *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 357 (2d Cir. 2000).

In the Court's opinion, the most important lesson from *In re Russell* is that implication is distinguishable from deduction.[9] Black's Law Dictionary (9th ed. 2009) defines deduction as "[t]he act or process of reasoning from general propositions to a specific application or conclusion." For example, the Bankruptcy Code does not specifically list "Arizona" in its definition of governmental units whose sovereign immunity is abrogated. But that conclusion can be deduced by a simple syllogism: sovereign immunity is abrogated as to states; Arizona is a state; therefore sovereign immunity is abrogated as to Arizona. *In re Russell,* 293 B.R. at 41. Similarly, it can be said that sovereign immunity is abrogated as to "other… domestic governments," Indian tribes are "other… domestic governments" (and indeed they are the *only* "other… domestic governments"), therefore sovereign immunity is abrogated as to Indian tribes. That Court further reasoned:

> Implication and inference are the rhetorical versions of induction, drawing conclusions from examples. For example, if the last phrase ["other foreign or domestic government"] were eliminated from § 106(a), one might draw the inference that because sovereign immunity is expressly abrogated as to the United States, the States, the Commonwealths, the Districts, and foreign governments, Congress must have intended to abrogate it as to all governments. That would be reasoning by implication or inference. While that might be equally as sound, and in fact how all new knowledge is achieved, it nevertheless retains the possibility for error. The [Supreme] Court may well have intended to proscribe this method of concluding that

---

[9] That is true notwithstanding the fact that the *In re Russell* Court's discussion of this point initially noted that the third possible meaning of "imply" ("to infer") was described to be an erroneous definition. *Id.* at 39.

there has been an abrogation of sovereign immunity, but the Court has not similarly proscribed that conclusion when reached by deduction. But because the statute expressly abrogates sovereign immunity as to all domestic governments, the statute applies to Indian tribes by deduction rather than by implication, so the conclusion is not proscribed by the Court's limitations. In other words, the proscription against abrogation by implication does not require the listing or naming of each government as to which it applies so long as they are unequivocally identified by the statute.

*Id.* (footnote omitted). This Court disagrees with *In re Nat'l Cattle Cong.* on the point that abrogation of tribal sovereign immunity can only be inferred from this statute. 247 B.R. at 267.

In sum, although Indian tribes have a "thumb on the interpretive scale" tending to tip the balance in their favor in the event of an ambiguity or lack of clarity, that does not come into play because, in this Court's view, Congress sufficiently, clearly, and unequivocally intended to abrogate their sovereign immunity in the subject statute.

## CONCLUSION

For the foregoing reasons, Plaintiff has met its burden and the Tribe Defendants' motion to dismiss is denied. Plaintiff shall present an appropriate order.

```
Signed on August 12, 2014
                                        /s/ Walter Shapero
                             Walter Shapero
                             United States Bankruptcy Judge
```