UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

GREEKTOWN HOLDINGS, LLC, *et al.*,[1]

        Debtors.

_____/

Case No. 08-53104
Chapter 11
Jointly Administered
Hon. Walter Shapero

BUCHWALD CAPITAL ADVISORS, LLC, solely
in its capacity as Litigation Trustee to the
GREEKTOWN LITIGATION TRUST,

        Plaintiff,

v.

DIMITRIOS ("JIM") PAPAS, VIOLA PAPAS,
TED GATZAROS, MARIA GATZAROS,
BARDEN DEVELOPMENT, INC., LAC VIEUX
DESERT BAND OF LAKE SUPERIOR
INDIANS, SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS, KEWADIN CASINOS
GAMING AUTHORITY, and BARDEN
NEVADA GAMING, LLC,

        Defendants.

_____/

Adv. Pro. No. 10-05712

## OPINION ON REMANDED SOVEREIGN IMMUNITY WAIVER ISSUE (DKT. 649)

### INTRODUCTION AND BACKGROUND

The Litigation Trustee ("Plaintiff") by this adversary proceeding essentially seeks to avoid

aspects of a restructuring and financing transaction whereby Greektown Holdings, LLC, a Debtor,

---

[1] The debtors in the jointly administered cases include Greektown Holdings, LLC; Greektown
Casino, LLC; Kewadin Greektown Casino, LLC; Monroe Partners, LLC; Greektown Holdings II,
Inc.; Contract Builders Corporation; Realty Equity Company Inc.; and Trappers GC Partner, LLC

1

directly or indirectly transferred money to multiple parties, including the Sault Ste. Marie Tribe of Chippewa Indians and its political subdivision Kewadin Casinos Gaming Authority (together, "the Tribe Defendants").[2] Plaintiff brought this fraudulent transfer action under 11 U.S.C. §§ 544 and 550, incorporating Mich. Comp. Laws §§ 566.34 and 566.35. This Opinion follows the District Court's Opinion, *In re Greektown Holdings, LLC*, 532 B.R. 680 (E.D. Mich. 2015) reversing this Court's Opinion at 516 B.R. 462 (Bankr. E.D. Mich. 2014). This Court had concluded that 11 U.S.C. § 106(a) abrogated the Tribe Defendants' sovereign immunity, but the District Court (a) reversed on appeal finding that the statute does not thereby waive tribal sovereign immunity; and (b) remanded the case for further proceedings relative to whether or not the Tribe Defendants had waived sovereign immunity.

JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). The Court has jurisdiction under 28 U.S.C. §§ 1334(b) and E.D. Mich. L.B.R. 83.50(a).

MOTION TO DISMISS STANDARD

---

(together, "Debtors").
[2] In an order entered on June 13, 2008 in the main Chapter 11 case (Case No. 08-53104, Dkt. 114), these several bankruptcies were consolidated for procedural purposes only and became jointly administered. In an order entered on April 22, 2010 in the main Chapter 11 case (Dkt. 2279), the Court granted the Official Committee of Unsecured Creditors ("Committee") authority to pursue bond avoidance claims on behalf of Greektown Holdings, LLC. In accordance with that order, the Committee initiated this adversary proceeding on May 28, 2010. Through a consent order entered in this adversary proceeding on August 14, 2010 (Adv. Pro. No. 10-05712, Dkt. 64), Buchwald Capital Advisors, LLC, solely in its capacity as Litigation Trustee for The Greektown Litigation Trust, substituted in for the Committee, and thereafter has prosecuted this action.

2

Fed.R.Bankr.P. 7012 incorporates Fed.R.Civ.P. 12(b)(1) and provides that a party may by motion assert the defense of lack of subject-matter jurisdiction. The Court must assume that the allegations in Plaintiff's complaint are true and Plaintiff bears the burden of proving jurisdiction in order to survive a motion to dismiss. *3D Sys., Inc. v. Envisiontec, Inc.*, 575 F. Supp. 2d 799, 802-03 (E.D. Mich. 2008).

DISCUSSION

I.    The Parties' Arguments

The Tribe Defendants base their argument on precedent stating that "[s]uits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991). This Opinion deals with what constitutes a "clear waiver by the tribe". The Tribe Defendants' initial argument is that the indicated clear waiver may only be accomplished by the required passage of duly adopted resolutions by the boards governing each of the Tribe Defendants.[3] It is undisputed that no such resolutions were ever adopted. Further, it is also an

---

[3] To be more specific and to summarize the pertinent authorities, the Sault Ste. Marie Tribe of Chippewa Indians ("Tribe") has a Board of Directors, as established by the Tribe's Constitution. Chapter 44 of the Tribal Code expressly reaffirms the Tribe's sovereign immunity from suit, unless waived under specific provisions of that Chapter, to wit: (a) by resolution of the Tribe's Board of Directors expressly waiving the Tribe's sovereign immunity and consenting to suit; (b) by a Tribal entity exercising authority expressly delegated to such entity in its charter or specifically by resolution of the Tribe's Board of Directors; or (c) for any claim "sounding in contract" arising from an express, written, and signed contract involving the performance of a proprietary function of the Tribe. As to the referred-to (b) and (c) criteria, no party alleges they are factually or legally pertinent, and the Court will not discuss those further. Kewadin Casinos Gaming Authority ("Authority") is a governmental instrumentality of the Tribe, as set forth in the Authority's charter and Chapter 94 of the Tribe's Tribal Code, which provides that the Tribe's Board of Directors grants irrevocable consent allowing the Authority's Management Board to waive the sovereign immunity of the Authority (but not that of the Tribe). The pertinent documents are attached as exhibits to the

3

undisputed fact that the Tribe Defendants never entered into any contract containing provisions purporting to waive sovereign immunity.

Plaintiff responds arguing that, notwithstanding the lack of enacted resolutions, the Tribe Defendants can and should be seen as having waived their sovereign immunity by virtue of their conduct in, or incident to, these bankruptcy and related proceedings, as well as the involved underlying business transactions. Specifically that alleged conduct involves the Tribe Defendants having pervasive involvement in the events leading up to and after the Debtors' bankruptcy filings, including the Tribe Defendants doing the following: (a) intermingling the functions of the various tribal and non-tribal parties in carrying out the Debtors' business; (b) utilizing the Debtors as their agents and causing the Debtors to make the alleged fraudulent transfers; (c) directing the Debtors to initiate their bankruptcy petitions; (d) dominating and controlling the Debtors, directing their postpetition litigation strategy, and sharing the same professionals; and (e) filing in the bankruptcy cases multiple proofs of claim, objections to plan confirmation, and an application for allowance of administrative expense claim. Based on these facts and events, Plaintiff argues that (1) the Tribe Defendants should be considered as legally standing in the shoes of the Debtors as their equivalents via theories of alter ego, piercing the corporate veil, and/or agency; and (2) by reason of such, the Tribe Defendants thusly should be seen as having voluntarily waived their sovereign immunity. The questions presented thus are: (a) is appropriate and specific governing board action the *only* way the Tribe Defendants can waive their sovereign immunity; and (b) if not, and if waiver can be accomplished by conduct, was there such a waiver in the circumstances of this case?

---

Tribe Defendants' Motion to Dismiss (Dkt. 649). The authenticity of these documents is not disputed and they are properly considered part of the undisputed record for purposes of this motion.

II.   <u>Can the Tribe Defendants' Sovereign Immunity Be Waived Only by the Required Tribal Resolutions?</u>

The Tribe Defendants rely principally on *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917 (6th Cir. 2009), in which MBF, a non-tribal entity, entered into a transaction and contractual relationship with CNI, a tribally incorporated entity. That Court summarized the salient facts as follows:

> MBF recognized that, should a dispute arise, CNI might try to claim sovereign immunity. Thus, MBF insisted on a contractual provision expressly waiving any sovereign immunity and a "representation and warranty" that CNI's waiver was valid, enforceable, and effective. Throughout the negotiations, the parties exchanged draft versions of the agreement. On October 5, 2006, CNI forwarded MBF a draft of the agreement that CNI's in-house lawyers had reviewed and electronically edited. The edits included five separate comments; two of the comments addressed the sovereign-immunity waiver provision and said that CNI board approval was necessary to waive tribal-sovereign immunity. Ultimately, however, both parties signed the agreement, and the board did not waive immunity.

*Id.* at 918-19. After CNI repudiated the agreement and litigation arose, the Sixth Circuit opined that "a tribe may choose to expressly waive its tribal-sovereign immunity either in its charter or by agreement. Here, however, CNI did not make that choice. CNI's charter requires board approval to waive sovereign immunity." *Id.* at 921 (citation omitted). It further opined:

> In addition to the tribal charter, an agreement can validly waive tribal-sovereign immunity. Here, the parties agree that the board of directors did not pass a resolution waiving sovereign immunity. The parties did, however, sign a waiver provision whereby both parties waived all immunities. MBF believed that CNI obtained the required approval for this waiver provision—but regardless of what MBF may have thought, board approval was not obtained, and CNI's charter controls. In short, without board approval, CNI's sovereign immunity remains intact.

*Id.* at 922. The Sixth Circuit thus, and notwithstanding the specific contractual waiver of immunity provision, also dismissed separate additional arguments that CNI waived sovereign immunity based on equitable doctrines when it signed the untrue representation that it waived sovereign immunity,

reasoning and concluding that unauthorized acts of tribal officials are insufficient to waive sovereign immunity. *Id.*[4]

   *Memphis Biofuels* is most relevant and applicable here and the Court is not persuaded by Plaintiff's attempts to distinguish it. Plaintiff first argues that its holding should be seen as applying only to *contractual* waivers, and not waivers *by conduct*, as Plaintiff argues occurred here. Contracts, by their nature, require mutuality of agreement. *Chires v. Cumulus Broad., LLC*, 543 F. Supp. 2d 712, 717 (E.D. Mich. 2008). On this point, one must first observe that if a specific contractual waiver cannot carry the day, one would be hard put to conclude as a matter of logic or law that *conduct*, which necessarily and by its very nature is or can be ambiguous, and in any event less directed, specific, or clear as a writing (and thus usually considered to be of somewhat lesser legal force and effect), might nevertheless carry the day. Every contract is in essence the culmination of some form of "conduct" (i.e. usually negotiation between and among its parties); the agreement being seen as the greater inclusive and embodiment of that process. If one conceives a specific agreement being, in essence, the form and result of conduct and/or an expression of conduct and intent put into definitive written terms, such agreement ought to be seen as in effect subsuming the possibility that something less than the written agreement, i.e. conduct that either led to it or, in this case, conduct that did not lead to an agreement, might nevertheless produce a result that even the existence of a written agreement itself does not legally provide for or permit. In this context, we have the Sixth Circuit's clear statement that in addition to and notwithstanding the existence of such an agreement, an enabling resolution is required. The agreement situation in *Memphis Biofuels*

---

[4] The case of *Colombe v. Rosebud Sioux Tribe*, 835 F. Supp. 2d 736, 746 (D. S.D. 2011) provides an example where the required tribal resolution was actually obtained, and sovereign immunity thus waived (reversed in part on other grounds, 747 F.3d 1020 (8th Cir. 2014)).

6

cannot therefore be properly distinguished as mere "contract, rather than conduct." In fact, in that case, what CNI did (signed an express, written contract including a representation and warranty that CNI's waiver was valid, enforceable, and effective) was in essence the clearest, and most explicit form of "conduct" imaginable. Yet the Sixth Circuit still found that to be insufficient to waive sovereign immunity, given the tribal charter's specific requirement that such waiver be by tribal board resolution. If what CNI did (or failed to do) in *Memphis Biofuels* was insufficient to waive its sovereign immunity, what Plaintiff alleges the Tribe Defendants did should also be seen as insufficient. Therefore, what Plaintiff alleges, even taken as true on its face, is clearly and as a matter of law, of less legal import than the conduct in *Memphis Biofuels*, a case this Court deems to be binding, highly persuasive, and an independent basis for granting the Tribe Defendants' Motion to Dismiss.

The same conclusion is reinforced by *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282 (11th Cir. 2001), which was cited with approval by the Sixth Circuit in *Memphis Biofuels*, 585 F.3d at 922. There, the Seminole tribe had a similar provision requiring that waivers of sovereign immunity be accomplished by a council resolution. A former tribal employee filed a disability discrimination claim under a federal statute, but there had been no resolution waiving sovereign immunity. He argued that the tribe's sovereign immunity had been abrogated because the tribe's chief signed an application for federal funds and the tribe received such funds on the specific promise that it comply with the subject nondiscrimination statute. The Eleventh Circuit opined:

> Chief Billie did not have actual or apparent authority to waive voluntarily the Tribe's sovereign immunity from Rehabilitation Act suits. Chief Billie did not somehow become vested with the power to waive that immunity simply because he had the actual or apparent authority to sign applications on behalf of the Tribe for federal funding. Such a finding would be directly contrary to the explicit provisions of the Tribal Constitution and Tribal Ordinance C–01–95 which expressly set forth

7

how, when, through whom, and under what circumstances the Seminole Tribe may voluntarily waive its immunity. Not one of the Florida law cases cited by Sanderlin discusses agency principles as they might be applied to a Native American tribe's assertion of sovereign immunity in a lawsuit in a federal court arising under federal law. Extending authority to waive sovereign immunity to a single individual, at least in this context, would be directly contrary to the Supreme Court's clear statement that "a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' " *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)).

*Id.* at 1288. Insofar as Plaintiff here argues that there must be "conduct" and not simply "contract," such argument is disposed of by the fact that the Seminole tribe actually received the federal funding, and that in itself can be considered as "conduct."

III.    Plaintiff's "Waiver by Conduct" Arguments

Plaintiff argues that the Tribe Defendants waived their sovereign immunity by engaging in lengthy litigation in this Court and its other pre-petition and post-petition dealings with the Debtors. As noted, the Tribe Defendants, among other things, filed multiple proofs of claim in the bankruptcy cases, objected to plan confirmation, and filed an application for allowance of administrative expense claim. Plaintiff argues that *Memphis Biofuels* does not abrogate the "waiver by conduct" doctrine (sometimes referred to by the parties as "waiver by litigation"), and that the Tribe Defendants' conduct can nonetheless still waive their sovereign immunity. What is then at issue is the existence, scope, and extent of the Tribe Defendants' alleged waiver.

Case law indicates that when an Indian tribe initiates litigation, it does not necessarily waive its sovereign immunity altogether, but rather only for a certain limited purpose. Thus the Supreme Court held that an Indian tribe that filed suit seeking an injunction did not waive its sovereign immunity as to a counterclaim against it, and opined:

Petitioner acknowledges that Indian tribes generally enjoy sovereign immunity, but argues that the Potawatomis waived their sovereign immunity by seeking an injunction against the Commission's proposed tax assessment. It argues that, to the extent that the Commission's counterclaims were "compulsory" under Federal Rule of Civil Procedure 13(a), the District Court did not need any independent jurisdictional basis to hear those claims.

We rejected an identical contention over a half-century ago in *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 511–512, 60 S.Ct. 653, 655–656, 84 L.Ed. 894 (1940). In that case, a surety bondholder claimed that a federal court had jurisdiction to hear its state-law counterclaim against an Indian Tribe because the Tribe's initial action to enforce the bond constituted a waiver of sovereign immunity. We held that a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe. *Id.,* at 513, 60 S.Ct., at 656. "Possessing ... immunity from direct suit, we are of the opinion [the Indian nations] possess a similar immunity from cross-suits." *Ibid.* Oklahoma does not argue that it received congressional authorization to adjudicate a counterclaim against the Tribe, and the case is therefore controlled by *Fidelity & Guaranty.* We uphold the Court of Appeals' determination that the Tribe did not waive its sovereign immunity merely by filing an action for injunctive relief.

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509-10 (1991).

Similarly, as to the issue of filing proofs of claim in a bankruptcy proceeding, "[t]he Supreme Court made clear in *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947), that when a sovereign files a claim against a debtor in bankruptcy, the sovereign waives immunity *with respect to adjudication of the claim.*" *In re White*, 139 F.3d 1268, 1271 (9th Cir. 1998) (emphasis added) (tribal agency waived immunity, but only as to its claim, by objecting to Chapter 11 plan confirmation and later filing a nondischargeability action after case was converted to Chapter 7); *In re Diaz*, 647 F.3d 1073, 1087 (11th Cir. 2011) ("A state that files a proof of claim in a bankruptcy case does not thereby subject itself to any and all lawsuits that in any way might relate to the bankruptcy. Instead, an adversary action against the state must bear a direct relationship to the

9

bankruptcy court's adjudication of the state's claim."). Plaintiff admits that a sovereign's filing of a proof of claim waives its sovereign immunity only with respect to claims arising from the same transaction or occurrence. *Pl. Response and Brief in Opp.*, Dkt. 668 at 20 (citing *In re Lazar*, 237 F.3d 967, 978 (9th Cir. 2001) and *In re Charter Oak Associates*, 361 F.3d 760, 768 (2d Cir. 2004)).[5] Generally, an Indian tribe's participation in some manner of litigation is not a total waiver of sovereign immunity, but is instead limited. *See White v. Univ. of California*, 765 F.3d 1010, 1026 (9th Cir. 2014) (citations omitted) ("Waiving immunity as to one particular issue does not operate as a general waiver. Thus, when a tribe files suit, it submits to jurisdiction only for purposes of adjudicating its claims, but not other matters, even if related."), *cert. denied*, (U.S. Jan. 25, 2016) (No. 15-667); *In re Vianese*, 195 B.R. 572, 575 (Bankr. N.D.N.Y. 1995) (tribal plaintiff who files § 523(a) nondischargeability action is subject to defendant's § 523(d) motion for attorney fees, which argued that tribal plaintiff's action was unjustified). The Tribe Defendants' participation in the claims allowance and confirmation processes has not, as a matter of law, constituted a waiver of

---

[5] On this point, it is worth noting that cases following this reasoning do so by relying on and discussing § 106(b) and (c), which provide:

> (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

> (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

However, for whatever such may be worth, the law of this case is that Indian tribes are not "governmental units" for purposes of § 106. *In re Greektown Holdings, LLC*, 532 B.R. 680 (E.D. Mich. 2015).

sovereign immunity that is broad enough to encompass this entire adversary proceeding against them, which seeks to recover alleged fraudulent transfers.

Among other cases, Plaintiff cites to *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680 (8th Cir. 2011) in support of the proposition that a tribal corporation voluntarily waives its sovereign immunity by filing a declaratory judgment action. While that was certainly true in that case, the operative facts there were that the tribal corporation, Amerind, actually conceded that it waived sovereign immunity *as to the declaratory judgment action*, and the matter at issue was sovereign immunity *as to the underlying tort claim. Id.* at 684, n.4. Furthermore, that Court went on to find that sovereign immunity was not waived as to the tort claim for reasons that are totally contrary to Plaintiff's other arguments, to wit:

> In fact, Article 8, Section 8.18 of Amerind's charter provides that Amerind may "sue and be sued in the Corporation's name in courts of competent jurisdiction within the United States, *but only to the extent provided in and subject to the limitations stated in Article 16 of this Charter.*" (emphasis added). Article 16.4 provides:
>
>> *Any waiver* [of tribal immunity] by the Corporation ... *shall be in the form of a resolution duly adopted by the Board of Directors*, which resolution shall not require the approval of the Charter Tribes or the Secretary of the Interior. *The resolution shall* identify the party or parties for whose benefit the waiver is granted, the transaction or transactions and the claims or classes of claim for which the waiver is granted, the property of the Corporation which may be subject to execution to satisfy any judgment which may be entered in the claim, and shall identify the court or courts in which suit against the Corporation may be brought. Any waiver shall be limited to claims arising from the acts or omissions of the Corporation, its Directors, officers, employees or agents, and shall be construed only to effect the property and Income of the Corporation.
>
> (emphasis added). The plaintiffs have provided no evidence that Amerind's Board of Directors ever adopted a resolution waiving Amerind's immunity as to the plaintiffs' pending suit, and absent such a resolution, we cannot say that Amerind unequivocally waived its sovereign immunity when it generally assumed ARMC's "obligations and liabilities." *See Memphis Biofuels,* 585 F.3d at 921–22 (where federal charter required board resolution to waive tribal immunity, immunity was not

11

waived without such a resolution even though the corporation's contract with the plaintiff expressly waived all immunities).

*Id.* at 687-88 (emphasis original) (footnote omitted).

Plaintiff, in arguing that sovereign entities can waive their immunity through their conduct, cites to cases involving states and the Eleventh Amendment, but not Indian tribes. *E.g. Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) (state's voluntary removal of suit against it to federal court constituted waiver of its Eleventh Amendment immunity as to state law claim). However, Eleventh Amendment sovereign immunity is legally distinguishable from tribal sovereign immunity, *id.* at 623, and in any event adds little to the inquiry, and the Court gives little weight to these cases.

Among Plaintiff's other "waiver by litigation" arguments is that the Tribe Defendants, by their conduct, actually or effectively filed the bankruptcy petitions on behalf of the Debtors, and thus waived sovereign immunity as to all actions that could be brought under the bankruptcy case, including this adversary proceeding. The Tribe Defendants dispute this, but for purposes of their Motion to Dismiss, the allegation must be taken as true. Plaintiff appears to imply (without citing to any specific supporting authority) that such an allegation, if proven, would be incontrovertible proof that confirms its "waiver by litigation" arguments, even without the use or application of theories of alter ego, piercing the corporate veil, or agency. There appears to be a scarcity of authority on the issue of Indian tribes filing bankruptcy petitions, or causing or directing other entities to do so. First, it is not clear whether or not Indian tribes themselves qualify to be debtors under the Bankruptcy Code, as discussed in Ji Hun Kim & Christopher S. Koenig, *Rolling the Dice on Debtor Eligibility*

*Native American Tribes and the Bankruptcy Code*, Am. Bankr. Inst. J., June 2015.[6] Here however, it is the referred-to Debtors, not the Tribe Defendants, who are actually the debtors in these bankruptcy cases. Second, as to whether tribally chartered, tribally owned corporation are eligible to be debtors, the authors state:

> Unfortunately, there are no binding judicial opinions on whether a tribal corporation separate and distinct from the tribe is an eligible debtor. However, if there are facts suggesting that a tribe and a tribally chartered corporation are held out as legally separate entities, and the tribal corporation is the actual obligor on the loan(s), it would seem arguable that tribal casinos might be eligible to file for bankruptcy.

*Id.* This too is inapplicable here because the Tribe Defendants are an Indian tribe itself and its political subdivision. While the Court notes that a sovereign entity that files a bankruptcy petition for itself thereby subjects itself to ensuing adversary proceedings, *e.g. In re City of Detroit*, No. 13-53846, 2015 WL 603888, at *11 (Bankr. E.D. Mich. Feb. 12, 2015) (listing many adversary proceedings stemming from Chapter 9 petition), that situation is inapplicable to the Tribe Defendants who, as noted, are not subject to a waiver of their sovereign immunity under § 106(a). *In re Greektown Holdings, LLC*, 532 B.R. 680. Plaintiff has cited no legal authorities in support of its proposition that by filing a bankruptcy petition (or causing or directing such filing for another entity), an entity waives its tribal sovereign immunity as to an adversary proceeding subsequently filed against it. The Court finds that these allegations must be denied as being legally unsupported and, furthermore, fail for the additional reasons that follow.

---

[6] This article concluded that tribes are ineligible to be debtors under Chapters 7, 9, or 11, but it relied on the premise that Indian tribes are "governmental units" as held by *Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055, 1058 (9th Cir. 2004) and similar cases. However, the law of the present case is that Indian tribes are not governmental units, at least for purposes of a § 106(a) waiver of sovereign immunity. *In re Greektown Holdings, LLC*, 532 B.R. 680; *accord In re Whitaker*, 474 B.R. 687 (B.A.P. 8th Cir. 2012).

13

IV.    Plaintiff Fails to Meet the High Burden for Waivers of Tribal Sovereign Immunity

Plaintiff essentially proposes the following path to success in this adversary proceeding: *First:* through extensive discovery, Plaintiff wants the opportunity to obtain information to prove that the Tribe Defendants' pre-petition and post-petition conduct as relates to the Debtors amounts to pervasive dominion and control and went well beyond filing proofs of claim or other litigation conduct. Plaintiff argues that it should have the opportunity to conduct this discovery into the extent of the Tribe Defendants' conduct, which in turn would answer the question of the scope of the Tribe Defendants' waiver of sovereign immunity. *Second:* through theories of alter ego, piercing the corporate veil, and/or agency, Plaintiff argues it can convince the Court that the Tribe Defendants should be, as a matter of law, legally equated to the Debtors. *Third:* Plaintiff argues that as a result of the foregoing, the Tribe Defendants thusly voluntarily waived their sovereign immunity by such conduct. As the Court previously noted, for purposes of this Motion to Dismiss, it must assume that Plaintiff's allegations are true. Thus, for present purposes, there is thus no need for discovery, and more importantly, Plaintiff's stated desire for discovery thus cannot be a defense to the Tribe Defendants' Motion to Dismiss.[7]

Taking all of Plaintiff's allegations as true, the Court finds that such are legally insufficient to amount to a waiver of the Tribe Defendants' sovereign immunity. The burden for finding a waiver of tribal sovereign immunity is a high one. A Congressional waiver of tribal sovereign immunity must

---

[7] Plaintiff cited to *Sault Ste. Marie Tribe of Chippewa Indians v. Hamilton*, No. 2:09-CV-95, 2010 WL 299483 (W.D. Mich. Jan. 20, 2010) for the proposition that discovery should be permitted into the Tribe's assertion of sovereign immunity before ruling on its motion to dismiss. *Pl. Sur-Reply* (Dkt. 707) at 3. Interestingly, the Court there granted discovery "with regard to the Tribe's governance or its charter documents, which might disclose a basis for waiver." 2010 WL 299483 at *2. Thus, that Court only permitted a *narrow* factual inquiry (and one pertaining to issues that are already undisputed in the case at hand). This cited case does not support Plaintiff's arguments.

14

be express, unequivocal, unmistakable, unambiguous, clearly evident in statutory language, and allow the Court to conclude with perfect confidence that Congress intended to waive sovereign immunity. *See generally In re Greektown Holdings, LLC*, 532 B.R. 680 (citing various cases and holding that Indian tribes are not within the statutory definition of "other… domestic governments"). Statutes are liberally construed in favor of Indians tribes, who have their thumb on the interpretive scale, so to speak. *Id.* at 686.This burden of proof is equally high for *voluntary* waivers of tribal sovereign immunity. For example, the Supreme Court has held:

> To abrogate tribal immunity, Congress must "unequivocally" express that purpose. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (citing *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Similarly, to relinquish its immunity, a tribe's waiver must be "clear." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.,* 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). We are satisfied that the Tribe in this case has waived, with the requisite clarity, immunity from the suit C & L brought to enforce its arbitration award.

*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 418 (2001) (tribe's entry into contract with a specific arbitration and choice of law provisions waived its sovereign immunity as to arbitration and enforcement of arbitration awards)[8]; *White*, 765 F.3d at 1026 (a voluntary waiver by a tribe must be unequivocally expressed); *N. Arapaho Tribe v. Harnsberger,* 697 F.3d 1272, 1281 (10th Cir. 2012) (waiver must be clear, not implied, and unequivocally expressed); *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 760 (1998)

---

[8] The legal issue of whether or not the subject contract was properly executed was not addressed in *C & L Enterprises*, as stated in 532 U.S. at 423 n.6:

> The Tribe alternatively urges affirmance on the grounds that the contract is void under 25 U.S.C. § 81 and that the members of the Tribe who executed the contract lacked the authority to do so on the Tribe's behalf. These issues were not aired in the Oklahoma courts and are not within the scope of the questions on which we granted review. We therefore decline to address them.

15

("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation. Congress has not abrogated this immunity, nor has petitioner waived it, so the immunity governs this case.").

A.    *Plaintiff's Legal Arguments That Theories of Alter Ego, Piercing the Corporate Veil, and/or Agency Apply Here*

Plaintiff and the Tribe Defendants have admittedly been unable to locate any case in which theories of alter ego, piercing the corporate veil, and/or agency have been employed to find a waiver of tribal sovereign immunity. Plaintiff concedes this may be an issue of first impression. Instead, Plaintiff makes arguments involving cases discussing the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602 *et seq.*, which Plaintiff claims are not directly applicable but are instructive for determining the scope of waiver, to wit: *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983); *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843 (D.C. Cir. 2000); *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 1999 U.S. Dist. LEXIS 7236 (S.D.N.Y. May 13, 1999).[9] Plaintiff would have this Court inquire into (a) the level of control that the Tribe Defendants asserted over the Debtors and (b) whether viewing the Tribe Defendants and the Debtors as distinct would work a fraud or injustice.

Even if Plaintiff somehow manages to prove (despite citing no supporting authority) that the Tribe Defendants can be deemed to have actually or effectively filed the bankruptcy petitions on behalf of the Debtors, this argument would also fail to meet the stated burden. First, it is unclear by

---

[9] Plaintiff also cites to *In re Paques, Inc.*, 277 B.R. 615, 633-37 (Bankr. E.D. Pa. 2000), which does not deal with sovereign immunity or the FSIA, but applies a very limited analysis of the piercing the corporate veil and alter ego theories in order to determine personal jurisdiction over a foreign entity.

what vehicle Plaintiff can prove this allegation, given the above-noted doubtful applicability of the theories of alter ego, piercing the corporate veil, and agency. Second, even if this allegation was proven, Plaintiff has not convinced the Court that such would waive the sovereign immunity of the Tribe Defendants, and not just the Debtors (if any Debtors in fact had sovereign immunity). Third, such in any event would still not meet the referred-to high burden for waiver.

The Court finds that the FSIA statute, and thus the cases analyzing it, to be so distinguishable as to have no material bearing on the present situation relating to Indian tribes. The Tribe Defendants correctly argue that the FSIA waives the sovereign immunity of a foreign state if it either explicitly *or by implication* waives that immunity. *Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 437 (6th Cir. 2002) (citing 28 U.S.C. § 1605(a)(1)). Additionally, 28 U.S.C. § 1605(a)(2) provides that "a foreign state lacks sovereign immunity in any suit that 'is based upon a commercial activity carried on in the United States by the foreign state[.]'" *Id.* However, 28 U.S.C. § 1603(a) defines "foreign state" to include "an agency or instrumentality of a foreign state as defined in subsection (b)."[10] Thus, a plain reading of FSIA provisions indicates that

---

[10] 28 U.S.C. § 1603(b) goes on to provide:

(b) An "agency or instrumentality of a foreign state" means any entity--

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

17

issues of implied waiver, commercial activity, and whether one entity is an agency or instrumentality

of another arise out of the statutory language itself, and not out of imputed theories of alter ego,

piercing the corporate veil, or agency. In other words, the FSIA contains as a facet an inquiry into

such matters. However, as noted, this aspect of the FSIA is antithetical to the present case involving

of Indian tribes largely because sovereign immunity waivers cannot be implied, as one Court opined:

> There is simply no room to apply the FSIA by analogy, as Allen would have us do.
> The FSIA precludes immunity of a foreign state when that state engages in
> commercial activities in the United States. 28 U.S.C. § 1605(a)(2). To apply that
> provision to the Tribe would contravene the Supreme Court's decision in *Kiowa,*
> holding that tribal immunity extended to commercial activities of the tribe. *Kiowa,*
> 523 U.S. at 760, 118 S.Ct. 1700. FSIA also permits a waiver of immunity to be
> implied, *see* 28 U.S.C. § 1605(a)(1), while the Supreme Court permits no such
> implied waiver in the case of Indian tribes. *See, e.g., Santa Clara Pueblo,* 436 U.S. at
> 58, 98 S.Ct. 1670. We accordingly decline Allen's invitation to apply FSIA by
> analogy to tribal sovereign immunity.

*Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006). Thus, the FSIA is so

distinguishable that it has no material application to this situation and has no persuasive value aiding

Plaintiff's arguments, even if used as an analogy. To the contrary, the FSIA might be seen as an

argument in favor of the Tribe Defendants because, although Congress could, it has apparently

chosen not to write a similarly broad statute such as FSIA that is applicable to Indian tribes (or at

least no such statute has been presented to this Court).

Therefore, by reason of the foregoing, Plaintiff has not presented sufficient legal support for its

proposed use of theories of alter ego, piercing the corporate veil, or agency. Because the

applicability of these theories is essential to Plaintiff's success, and because the Court thus holds

them inapplicable here as a matter of law, such constitutes an independent basis for granting the

Tribe Defendants' Motion to Dismiss.

B.    *Even if Theories of Alter Ego, Piercing the Corporate Veil, and/or Agency Were Applicable, Plaintiff's Application Thereof Would be Legally Insufficient to Meet the High Burden of Waiver of Sovereign Immunity*

As stated in the noted various cases, waivers of tribal sovereign immunity must be express, unequivocal, unmistakable, and unambiguous. *See In re Greektown Holdings, LLC*, 532 B.R. 680. Plaintiff's path to success is anything but that, the proposed path being demonstrating "waiver by conduct" by employing theories that are extremely fact-specific. *Steelcase, Inc. v. Harbin's, Inc.*, No. 104CV26, 2005 WL 1923606, at *6 (W.D. Mich. Aug. 11, 2005) (cross motions for summary judgment denied because piercing the corporate veil inquiry under Michigan law is fact-intensive, equitable, and involves credibility issues and questions of fact); *Needa Parts Mfg., Inc. v. PSNet, Inc.*, 635 F. Supp. 2d 642, 647 (E.D. Mich. 2009) (under Michigan law, question of whether entity was alter ego of another entity is intensely fact-driven, dependent on the equities, and cannot be determined on summary judgment); *Meretta v. Peach*, 195 Mich. App. 695, 697, (1992) ("Where there is a disputed question of agency, any testimony, either direct or inferential, tending to establish agency creates a question of fact for the jury to determine.").

This situation is clearly distinguishable from *C & L Enterprises*, *supra* 532 U.S. 411, where the Supreme Court found a voluntary waiver by examining and relying upon the language of an explicit contract containing arbitration and choice of law clauses. Instead, Plaintiff here wishes to embark on an expedition of discovery and fact-intensive inquiries. On that point, one Court has stated the following:

> World Touch argues alternatively that the Management Company had apparent authority to bind the Casino and the Tribe to all the terms of the contract, including the waiver of sovereign immunity (or a question of fact exists regarding such authority). World Touch cites authority from the law of agency in support of this argument. However, regardless of any apparent or implicit, or even express, authority of the Management Company to bind the Casino and the Tribe to contract terms and

19

other commercial undertakings, such authority is insufficient to waive the Tribe's sovereign immunity. *See Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 148, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982)(sovereign power "remain[s] intact unless surrendered in unmistakable terms"); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58–59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)("a waiver of sovereign immunity cannot be implied but must be unequivocally expressed")(internal quotation omitted). Similarly, any argument that subsequent acts, or acquiescence in carrying out the contract entered into with apparent authority, estop the Tribe from claiming sovereign immunity must fail. *See Merrion*, 455 U.S. at 148, 102 S.Ct. 894; *Santa Clara Pueblo*, 436 U.S. at 58–59, 98 S.Ct. 1670.

*World Touch Gaming, Inc. v. Massena Mgmt., LLC*, 117 F. Supp. 2d 271, 276 (N.D.N.Y. 2000) (cited with approval by the Sixth Circuit in *Memphis Biofuels,* 585 F.3d at 922). Further, Plaintiff argues that *Memphis Biofuels* held that "where a contract purports to waive sovereign immunity and the parties fail to obtain that waiver in accordance with the explicit terms of the applicable constitution or charter, the non-sovereign party *will not be able to use equitable or quasi-contractual remedies* to override explicit waiver provisions contained in a tribal constitution or charter." *Pl. Response and Brief in Opp.*, Dkt. 668 at 16 (emphasis altered) (citing 585 F.3d at 922). Plaintiff's planned use of the equitable theories of piercing the corporate veil, alter ego, and/or certain equitable agency principles are thus prohibited even by Plaintiff's own reading of *Memphis Biofuels*.

The practical reality of the situation is that if Plaintiff is given the opportunity to prove its case, such will need to involve lengthy, extensive, and undoubtedly highly-contested discovery. And once discovery is completed, as with any fact-intensive inquiry, an evidentiary hearing will need to be held involving issues of admissibility, credibility, weight, and the balance of conflicting evidence. To be sure, that is a Court's responsibility and should not be shied away from merely because of its nature or its complexity. But in this inquiry, the Court must be cognizant of the heightened legal burden. But, for the sake of argument and accepting that Plaintiff could persuade the Court of its every allegation, that is still not enough. As a matter of law, Plaintiff cannot but fail to meet the high

20

burden of proving the required express, unequivocal, unmistakable, and unambiguous waiver. At the very least, any such waiver, even if those allegations are shown by the asserted facts and theories, must by its nature be considered to be "implied" and that would be legally insufficient. *Santa Clara Pueblo*, *supra* 436 U.S. at 58 (waiver of sovereign immunity cannot be implied but must be unequivocally expressed).

By way of example and as previously noted, the Tribe Defendants previously argued in a separate motion that Congress did not abrogate tribal sovereign immunity by enacting § 106(a). This Court disagreed, finding among other things that the term "other… domestic governments" used in § 101(27) clearly and unequivocally includes Indian tribes, and in fact, can and may *only* include Indian tribes. 516 B.R. at 470 (Bankr. E.D. Mich. 2014). The District Court reversed, finding that the applicable statutes did not clearly and unequivocally express Congressional intent to abrogate sovereign immunity. 532 B.R. at 697-701 (E.D. Mich. 2015). The District Court reasoned that, among other things, Congress could have been clearer if it had explicitly referred to "Indian tribes" by name. *Id.* To recapitulate, the § 106(a) issue was a matter of *law* that was determined by interpreting *statutes*, but was deemed by the District Court to be insufficient to meet the high burden in the matter before it. . In a sense, the  heightened clear,  unequivocal and  non-implied  standard and burden to be utilized in sovereign immunity inquiries noted and applied  by the District Court, if correct,  has similar application and force here. Plaintiff's position encompasses the very definition of "implication,"- a term that essentially involves reading something  into a less than explicit situation and inferring and drawing conclusions from derived facts. As such, it  perforce falls short of what this  Court  concludes is the required  appropriate   standard for finding a waiver.

CONCLUSION

21

For the foregoing reasons, the Tribe Defendants' Motion to Dismiss must be granted. The Court is entering an appropriate order contemporaneously.

```
Signed on September 29, 2016
```

```
                              /s/ Walter Shapero
                         _____
                         Walter Shapero
                         United States Bankruptcy Judge
```